O

# United States District Court
# Central District of California

| | |
|---|---|
| KEN DILLEY,<br><br>            Plaintiff,<br><br>    v.<br><br>C.R. BARD, INC.; DAVOL INC.;<br>LESLIE EDRICH; DOES 1–100,<br>inclusive,<br><br>            Defendants. | Case No. 2:14-cv-01795-ODW(ASx)<br><br>**ORDER GRANTING MOTION TO DISMISS [10]** |

## I. INTRODUCTION

Plaintiff Ken Dilley suffered from bilateral hernias. He went in for surgery, and his physician—Defendant Dr. Leslie Edrich—used PerFix mesh plugs and patches manufactured by Defendants C.R. Bard, Inc. and Davol Inc. to repair the hernias. After suffering debilitating pain, Dilley went to another hospital about three years later and had to have the PerFix products removed. He then filed suit against Defendants alleging several products-liability theories under California law. C.R. Bard and Davol now move to dismiss the amended Complaint. Since Dilley has failed to identify any defects in the manufacturing, design, or warnings associated with the PerFix products, the Court finds that he has failed to state any actionable

claim. The Court therefore **GRANTS** C.R. Bard and Davol's Motion to Dismiss with partial leave to amend.[1]

## II. FACTUAL BACKGROUND

In January 2008, Dilley was admitted to Long Beach Medical Center for hernia surgery. (FAC ¶ 7.) He was then scheduled for bilateral inguinal hernia repairs using Defendants' PerFix mesh plugs and patches. (*Id.*)

Defendant Dr. Leslie Edrich performed the surgery. (*Id.* ¶ 8.) Dr. Edrich started on Dilley's left side and discovered a moderate-to-large direct hernia medial to the inferior epigrastic vessels. (*Id.*) Dr. Edrich used a large PerFix mesh plug to fully invaginate the direct hernia sac back into the preperitoneal space. (*Id.*) The edges of the transversalis fascia were then sutured over the edges of the mesh plug. (*Id.*) Dr. Edrich then proceeded to perform the same procedure on Dilley's right side. (*Id.* ¶ 9.) In total, Dr. Edrich used two PerFix mesh plugs, size large 1.6 x 1.90, which are manufactured by Davol Inc. (*Id.* ¶ 10.)

After his surgery, Dilley began to suffer from debilitating pain in his groin and inner thigh. (*Id.* ¶ 11.) As a result, Dilley went to Cedars-Sinai Medical Center on March 9, 2011. (*Id.* ¶ 12.) He was diagnosed with bilateral chronic postoperative groin pain, chronic pain syndrome, and recurrent bilateral inguinal hernias. (*Id.*) Dilley then had right iliohypogastric, right ilioinguinal, and left ilioinguinal neurectomies; bilateral removal of mesh plugs, patches, and sutures; and open bilateral recurrent inguinal hernia repairs with mesh. (*Id.*)

The Cedars-Sinai medical records reflect that the PerFix mesh plugs and patches had hardened, shrunk, scarified, and began pulling off the conjoint tendon on Dilley's right side. (*Id.* ¶ 13.) Dilley "is informed and believes" that Defendants were aware that the PerFix mesh plugs would commonly harden, shrink, scarify, or migrate and therefore cause a patient severe pain. (*Id.*)

---

[1] After carefully considering the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

On March 8, 2013, Dilley filed suit against C.R. Bard and Davol in Los Angeles County Superior Court. Defendants subsequently removed the action to this Court. *Dilley v. C.R. Bard, Inc.*, No. 2:14-cv-00258-ODW(ASx) (C.D. Cal. removal filed Jan. 10, 2014). But the Court remanded the action due to Defendants' insufficient citizenship allegations.

Dilley filed an amended Complaint in state court, adding Dr. Edrich as a defendant.[2] Dilley alleges claims for strict products liability, design defect, and failure to warn. On March 11, 2014, C.R. Bard and Davol ("Defendants") removed this action for the second time. They subsequently moved to dismiss under Rule 12(b)(6) and strike under Rule 12(f).[3] Dilley failed to oppose the Motion.[4] That Motion is now before the Court for decision.

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[2] Though Dr. Edrich is a California citizen, C.R. Bard and Davol contend in their Notice of Removal that the Court must ignore Edrich's citizenship under the fraudulent-joinder doctrine. (Not. of Removal ¶¶ 24–30.) Dilley has not moved to remand his case, and the Court preliminarily agrees with Defendants' jurisdictional position.

[3] Dr. Edrich has not joined in the dismissal Motion, though it does not appear that any of C.R. Bard and Davol's arguments would relate to him in any event.

[4] Under Local Rule 7-12, the Court may consider the failure to timely oppose a motion as consent to the Court granting the motion. Nevertheless, the Court proceeds to address the merits of Defendants' Motion notwithstanding Dilley's silence.

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should free grant leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.  DISCUSSION

Dilley alleges three different theories of state-law products liability—essentially contending that the PerFix mesh plugs were defective in either their design or manufacture. But Defendants argue that Dilley failed to adequately identify what the alleged defect is. They also assert that a plaintiff may not pursue a design-defect strict-products-liability claim for medical devices under California law. The Court agrees with Defendants and grants their Motion in its entirety.

**A.  Strict products liability**

California law recognizes three types of strict products liability: design defects, manufacturing defects, and failure to warn. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Products Liab. Litig.*, 754 F. Supp. 2d 1208, 1219–20 (C.D. Cal. 2010). In his first claim styled "Products Liability – Strict Liability," Dilley only mentions an alleged manufacturing defect. (FAC ¶ 15.)
/ / /

1    A manufacturing defect arises when a product emerges from the manufacturer's assembly line different "from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429 (1978).

Defendants argue that Dilley has not alleged any facts that identify or explain how the PerFix mesh plugs used in his hernia-repair surgery deviated from Bard's intended design or other seemingly identical units.

The Court agrees with Defendants. Dilley simply alleges, "As set forth above, plaintiff is informed and believes and thereon alleges that defendants' Perfix mesh plugs and patches possessed a defect in their manufacture that caused them to shrink, harden, and scarify . . . ." (FAC ¶ 15.) The terse statement that the plugs had "a defect" does not put Defendants on notice of what "defect" the plugs allegedly had. As another California federal court has held, a plaintiff alleging a manufacturing defect "must *identify/explain how* the [product] either deviated from [the manufacturer's] intended result/design or *how* the [product] deviated from other seemingly identical [products]. A bare allegation that the [product] had 'a manufacturing defect' is an insufficient legal conclusion." *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010) (citations omitted).

The Court therefore finds that Dilley had failed to adequately plead a manufacturing defect and **GRANTS** Defendants' Motion on this ground.

**B.    Design defect**

A design defect occurs not when a particular unit of a product differs from other seemingly identical ones but when the entire product line "failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Barker*, 20 Cal. 3d at 429. Dilley does not distinguish between strict liability and negligence in his second claim, so the Court presumes that he intends to pursue a design-defect claim under both theories.

/ / /

### 1. *Strict liability*

As an initial matter, Defendants correctly point out that California law forecloses a strict-products-liability action for medical devices based on a design defect. *Artiglio v. Super. Ct.*, 22 Cal. App. 4th 1388, 1397 (1994) ("We therefore follow the lead of the *Hufft* and *Plenger* courts, and conclude that the entire category of medical implants available only by resort to the services of a physician are immune from design defect strict liability."); *Hufft v. Horowitz*, 4 Cal. App. 4th 8, 19–20 (1992). A plaintiff may therefore only pursue a medical-device, design-defect claim under a negligence theory. *Armstrong v. Optical Radiation Corp.*, 50 Cal. App. 4th 580, 595 (1996).

To the extent that Dilley seeks to hold Defendants strictly liable for an alleged design defect in the PerFix mesh plugs, the Court accordingly **GRANTS** Defendants' Motion without leave to amend.

### 2. *Negligence*

The deficiencies with Dilley's first claim spill over into his second claim. Once again, he merely alleges that "Plaintiff is informed and believes and thereon alleges that defendants' Perfix mesh plugs and patches possessed a defect in its design of which said defect existed at the time it left defendants' possession." (FAC ¶ 22.) As Defendants point out, this bare assertion does not in any way identify the alleged design defect that plagues all PerFix plugs and patches. Dilley thus fails to pass muster under Rule 8's pleading standard, and the Court resultantly **GRANTS** Defendants' Motion on this ground.

## C. **Failure to warn**

A failure-to-warn claim is a unique species of products-liability law in that the product's design—either per unit or throughout the product line—is irrelevant; indeed, "a product may be defective even though it is manufactured or designed flawlessly." *Saller v. Crown Cork & Seal Co., Inc.*, 187 Cal. App. 4th 1220, 1238 (2010). A defendant must warn a plaintiff of "a particular risk that was known or knowable in

light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 1002 (1991). A product therefore becomes "defective" under this theory through the absence of such a warning. *Cavers v. Cushman Motor Sales, Inc.*, 95 Cal. App. 3d 338, 347 (1979).

California follows the learned-intermediary doctrine, which provides that the duty to warn in the case of medical devices only runs to the physician—the learned intermediary—not the patient. *See Carlin v. Super. Ct.*, 13 Cal. 4th 1104, 1116 (1996); *Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 362 (1992).

Defendants contend that Dilley has failed to identify any inadequacy in the labeling on the PerFix plugs or what specific danger Bard should have warned against. They also point out that since the duty to warn only runs to Dilley's learned intermediary—here, Dr. Edrich—Dilley's third claim fails because he specifically alleges that Dr. Edirch "was aware of the problems associated with the use of defendants' Perfix mesh plugs and patches or reasonably should have been aware of the problems associated with the use" of them. (*See* FAC ¶ 27.)

Both of Defendants' arguments are persuasive. First, Dilley has not identified any warnings that were given with the PerFix plugs let alone how they are allegedly deficient. Second, he contends that Dr. Edrich received the warnings yet still prescribed the PerFix plugs and patches. Under California law, the learned intermediary's prescription of the medical devices in light of knowledge of the risks precludes a failure-to-warn claim. *Cox v. Depuy Motech, Inc.*, No. 5-CV-3848-L(JA), 2000 WL 1160486, at *8 (S.D. Cal. Mar. 29, 2000). Dilley therefore has not stated a viable claim under this theory, and the Court **GRANTS** Defendants' Motion on this ground.

**D. Punitive damages**

Defendants next move to strike Dilley's punitive-damages request under Rule 12(f). That Rule empowers a court to "strike from a pleading an insufficient

7

defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks omitted), *rev'd on other grounds*, 510 U.S. 517 (1994).

California law allows for punitive-damages recovery when the plaintiff proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). But that section further provides that an employer is not liable for punitive damages for its employees' conduct "unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." *Id.* § 3294(b).

C.R. Bard and Davol argue that Dilley never states facts establishing the requisite oppression, fraud, or malice. Further, he has not identified any actions by any of Defendants' officers, directors, or managing agents sufficient to invoke section 3294(b).

Section 3294 presents an interesting *Erie* doctrine interplay between California substantive and federal pleading law. Under California law, a plaintiff must do more than simply allege that a defendant's conduct was "wrongful, willful, wanton, reckless, or unlawful" to support a punitive-damages request. *G. D. Searle & Co. v. Super. Ct.*, 49 Cal. App. 3d 22, 29 (1975). Rather, "fairness demands that [the defendant] receive adequate notice of the kind of conduct charged against him." *Id.* But under federal pleading law, a plaintiff may generally aver "oppression, fraud, or malice" when stating a section 3294 claim. *Jackson v. E. Bay Hosp.*, 980 F. Supp. 1341, 1354 (N.D. Cal. 1997); *see also Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 407 (C.D. Cal. 2005); Fed. R. Civ. P. 9(b).

/ / /

Dilley barely identifies Defendants' conduct underlying his products-liability claims—much less states how that conduct rises to the level of "oppression, fraud, or malice." While he may generally aver those elements, "Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009) (specifically interpreting Rule 9(b)'s pleading requirement).

Neither has Dilley parsed out the actions of any of Defendants' employees and how either C.R. Bard or Davol are liable for punitive damages as a result of those actions as specified under section 3294(b). Dilley does not mention a single employee of Defendants in his First Amended Complaint, so by that argument, he has failed to satisfy even the most lenient pleading standard. The Court therefore **GRANTS** Defendants' Motion to Strike with leave to amend.

### V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** C.R. Bard and Davol's Motion in its entirety. (ECF No. 10.) If he can comply with Rule 11(b), Dilley may amend his Complaint within 14 days with respect to all claims except strict products liability based on a design defect.

**IT IS SO ORDERED.**

April 3, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**