**O**

# United States District Court
# Central District of California

| | |
|---|---|
| KEN DILLEY, | Case No. 2:14-cv-01795-ODW(ASx) |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO** |
| C.R. BARD, INC.; DAVOL INC.; | **DISMISS SECOND AMENDED** |
| LESLIE EDRICH; DOES 1–100, | **COMPLAINT WITHOUT LEAVE** |
| inclusive, | **TO AMEND AND ORDER TO** |
| Defendants. | **SHOW CAUSE RE. FAILURE TO** |
| | **STATE A CLAIM [22]** |

## I.   INTRODUCTION

Plaintiff Ken Dilley suffered from bilateral hernias and underwent a repair procedure in which Defendant Dr. Leslie Edrich implanted PerFix mesh plugs. But after Dilley began experiencing debilitating pain, another surgeon removed the plugs, finding that they had hardened, shrunk, and scarified.

Defendants C.R. Bard, Inc. and Davol Inc. bring the second Motion to Dismiss in this action. The Court previously granted Defendants' unopposed Motion, finding that Dilley failed to adequately plead a manufacturing or design defect sufficient to sustain his products-liability claims. But Dilley's Second Amended Complaint suffers from the same pleading inadequacies, which are fatal to his claim. The Court

therefore **GRANTS** C.R. Bard and Davol's Motion to Dismiss the Second Amended Complain **WITHOUT LEAVE TO AMEND**.[1]

## II.   FACTUAL BACKGROUND

In this Second Amended Complaint ("SAC"), Dilley includes essentially the same factual allegations as he did in his First Amended Complaint.   The Court therefore incorporates the factual background from its April 3, 2014 Order Granting Motion to Dismiss into this Order.

Dilley augmented his factual allegations with respect to the state of the PerFix plugs and patches after they were explanted.   The doctor who removed the products described the mesh patches as "bilaterally, shrunken, with pulling off the conjoint tendon on the right." (SAC ¶ 13.)   The left and right ilionguinal nerves had adhered to the underside of the mesh patches, and the patches had "folded into a linear mass parallel to the inguinal ligament."   (*Id.*)   On Dilley's right side, the patch had not adhered well to the external oblique fascia, allowing the surgeon to fairly easily tease it off.   (*Id.* ¶ 14.)   But on the left side, the patch adhered better to the fascia.   (*Id.* ¶ 15.)

After the plugs and patches were removed, they were transferred to private storage facility.   (*Id.* ¶ 17.)   The plugs had hardened, shrunken, scarified, oxidized, and folded over.   (*Id.*)   In their hardened state, the plugs had continually jabbed into Dilley's bladder, thus causing him pain.   (*Id.*)   One doctor described them as "like hard wood."   (*Id.* ¶ 18.)

On April 3, 2014, the Court granted Defendants' Motion to Dismiss Dilley's First Amended Complaint.   (ECF No. 17.)   The Court found that Dilley had failed to adequately plead a defect sufficient to sustain either his strict-products-liability claim based on a manufacturing defect or his negligent design-defect claim.   The Court also found that Plaintiff's strict-liability design-defect claim failed as a matter of law.   The Court thus granted the Motion in its entirety and granted Dilley "partial leave to

---

[1] After carefully considering the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

1  amend . . . with respect to all claims except strict products liability based on a design
2  defect."  (ECF No. 17, at 1, 9.)

3        Dilley subsequently filed his Second Amended Complaint.  On May 5, 2014,
4  Defendants moved to dismiss that Complaint under Rule 12(b)(6).  (ECF No. 22.)
5  Dilley filed an untimely opposition brief.[2]  That Motion is now before the Court for
6  decision.

7                            **III.   LEGAL STANDARD**

8        A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable
9  legal theory or insufficient facts pleaded to support an otherwise cognizable legal
10 theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To
11 survive a dismissal motion, a complaint need only satisfy the minimal notice pleading
12 requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v.*
13 *Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to
14 raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550
15 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter,
16 accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.*
17 *Iqbal*, 556 U.S. 662, 678 (2009).

18       The determination whether a complaint satisfies the plausibility standard is a
19 "context-specific task that requires the reviewing court to draw on its judicial
20 experience and common sense."  *Id.* at 679.  A court is generally limited to the
21 pleadings and must construe all "factual allegations set forth in the complaint . . . as
22 true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d
23 668, 688 (9th Cir. 2001).  But a court need not blindly accept conclusory allegations,
24 / / /

25
26
27    [2] While the Court could have struck the untimely opposition brief and deemed the failure to timely
      oppose as consent to granting this Motion, the Court declines to invoke that sanction at this time.
28    But the Court reminds counsel that failure to comply with the Local Rules may subject them to
      sanctions within this Court's discretion under Local Rule 83-7.

unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.   DISCUSSION

Defendants move to dismiss Dilley's Complaint, arguing that he again failed to adequately plead that the PerFix plugs and patches had a manufacturing or design defect.  They also argue that the Court should dismiss Dilley's newly minted negligence claim, as the Court did not permit him leave to add it.  The Court agrees with Defendants and dismisses Dilley's Second Amended Complaint against C.R. Bard and Davol without leave to amend.

## A.   Strict products liability

As in its last Order, the Court construes Dilley's first claim for "Product Liability" as a one for strict products liability based on a manufacturing defect.  (*See* SAC 6–8; ¶ 21 ("[D]efendants' PerFix mesh plugs and patches possessed a defect in their manufacture . . . .").)

A manufacturing defect arises when a product emerges from the manufacturer's assembly line different "from the manufacturer's intended result or from other ostensibly identical units of the same product line."  *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429 (1978).   As the Court previously noted, a plaintiff alleging a manufacturing defect "must *identify/explain how* the [product] either deviated from [the manufacturer's] intended result/design or *how* the [product] deviated from other seemingly identical [products].   A bare allegation that the [product] had 'a manufacturing defect' is an insufficient legal conclusion."  *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010) (citations omitted); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Products Liab. Litig.*, 754 F. Supp. 2d 1208, 1220 (C.D. Cal. 2010); *Baker v. Bayer Healthcare Pharm., Inc.*, No. C13-0490 TEH, 2013 WL 6698653, at *4 (N.D. Cal. Dec. 19, 2013) ("Plaintiff has thus provided only insufficient legal conclusions that [the product] had / / /

a manufacturing defect, which are insufficient to state a legally cognizable manufacturing defect claim.").

Defendants argue that Dilley does not allege any facts that identify or explain how the PerFix plugs and patches used in his hernia-repair procedure either deviated from Bard's intended design or how the specific units he received deviated from other seemingly identical units of the same model.   They point out that Dilley's manufacturing-defect allegations in his Second Amended Complaint mirror those in this First Amended Complaint.

In response, Dilley copies and pastes several paragraphs of his Second Amended Complaint purportedly to demonstrate that he has alleged a manufacturing defect.   He also references a 10-year study in which researchers studied the degradation of mesh material after implantation.   Finally, he attaches information "produced in the discovery phase in plaintiff's Arbitration with defendant Dr. Leslie Edrich" to establish that Defendants designed the plugs to remain in a fluted shape. (Opp'n 10.)

Defendants are correct that Dilley's manufacturing-defect allegations in his Second Amended Complaint mirror the allegations the Court found deficient in his First Amended Complaint.   In the First Amended Complaint, Dilley alleged that "[D]efendants' Perfix mesh plugs and patches possessed a defect in their manufacture that caused them to shrink, harden, and scarify thereby causing debilitating pain to plaintiff's groin."  (FAC ¶ 15.)  Now he alleges that "[D]efendants' PerFix mesh plugs and patches possessed a defect in their manufacture that caused them to shrink, harden, scarify, oxidize, migrate and had adhesion formation issues thereby causing debilitating and permanent pain to plaintiff's groin and abdominal area."  (SAC ¶ 21.) Dilley has failed to augment his allegations in any way that establishes what manufacturing defect the plugs allegedly suffered from.

While the Court must Dilley's allegations as true, the Court finds little support for Dilley's manufacturing-defect allegations in the 10-year study.   There is no

1    indication that the researchers specifically studied the plugs implanted in Dilley or

2    even PerFix plugs in general.  Dilley must identify how the particular plugs he

3    received deviated from Defendants' intended design.  A general study does little to

4    advance this pleading requirement.

5          The Court also declines to take judicial notice of material produced in discovery

6    in the state-court matter relating to Dr. Edrich.  Dilley did not incorporate this material

7    by reference in his Second Amended Complaint, and it is does not fit under either

8    judicial-notice prong of Federal Rule of Evidence 201(b).

9          The Court therefore finds that Dilley has again failed to adequately plead a

10   manufacturing defect and **GRANTS** Defendants' Motion on this ground.

11   **B.    Design defect**

12         The Court previously dismissed Dilley's design-defect claim based on strict

13   liability, finding that it failed as a matter of California law.  *See Artiglio v. Super. Ct.*,

14   22 Cal. App. 4th 1388, 1397 (Ct. App. 1994); *Hufft v. Horowitz*, 4 Cal. App. 4th 8,

15   19–20 (Ct. App. 1992).  The Court therefore only permitted Dilley leave to amend his

16   design-defect claim based in negligence.  *See Armstrong v. Optical Radiation Corp.*,

17   50 Cal. App. 4th 580, 595 (Ct. App. 1996) (holding that a plaintiff may only pursue a

18   medical-device, design-defect claim under a negligence theory).

19         Under a negligent design-defect claim, a plaintiff must prove not only that the

20   product was defective but also that the defendant was negligent.  *Merrill v. Navegar,*

21   *Inc.*, 26 Cal. 4th 465 (2001).

22         Defendants again point out that Dilley failed to identify what design defect

23   allegedly affected PerFix plugs as a whole.  In fact, Dilley does not even address the

24   issue in his Opposition.

25         Dilley's design-defect claim fails for the same reason as his manufacturing-

26   defect claim, namely, that he has not been able to identify a design defect.  He has

27   alleged a significant amount of information about the operations he underwent, the

28   pain he endured, and surgeon's findings.  But all of that information does not translate

1  into an actionable defect without alleging how the product was defective.  The Court
2  thus **GRANTS** Defendant's Motion on this ground.

3  **C.    Negligence**

4    In its previous dismissal Order, the Court only granted Dilley "partial" leave to
5  amend with respect to the claims the Court found failed as a matter of pleading
6  adequacy.  Up to this point, Dilley has never alleged a pure negligence claim—though
7  of course negligence bears directly upon his design-defect claim.  Despite this
8  carefully circumscribed leave to amend, Dilley added an entirely new claim against
9  Bard and Davol titled simply "Negligence."

10   Defendants ask the Court to dismiss this claim as exceeding the scope of the
11 Court's leave to amend.  They cite to case law indicating that when a court grants
12 limited leave to amend, a plaintiff may not simply add additional claims without
13 seeking further leave of court.  *See DeLeon v. Wells Fargo Bank, N.A.*, 10-CV-01390-
14 LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) ("In this case, the prior
15 order granting leave to amend was limited in scope, and Plaintiffs were therefore
16 required to seek leave of the Court before adding new claims.").  Dilley does not
17 dispute Defendants' arguments.

18   Under Federal Rule of Civil Procedure 15(a), a party may amend a pleading
19 once as a matter of course within 21 days after serving it or within 21 days of service
20 of, among others, a Rule 12(b)(6) motion.  In all other circumstances, a party must
21 seek leave to amend from the court.  Fed. R. Civ. P. 15(a)(2).

22   Dilley has not requested leave from the Court to add this freshly minted
23 negligence claim.  He does not even ask for leave to amend in his Opposition; he only
24 states that he could provide a "more definite statement" if asked for one.  (Opp'n 11.)
25 The Court only permitted him leave to amend his design-defect claim based in
26 negligence.  Dilley's violation of the Court's previous Order is alone enough to
27 dismiss the claim.

28 / / /

1    But even if the Court were to consider the merits of the negligence claims,

2    problems with it abound.  Dilley has so wholly failed to put Defendants on notice of

3    the precise basis for their alleged liability that Defendants cannot possibly defend

4    against the claim.  He sets forth a laundry list of 16 reasons why the "PerFix mesh

5    plugs were unsafe and unfit for use by reason of dangers to its users."  (SAC ¶ 41.)

6    The terse allegations run the gamut from failure to test to failure to warn to negligent

7    advertising to negligent production of the products.  (*Id.*)  Noticeably absent are any

8    facts indicating how Defendants were allegedly negligent in any of these 16 different

9    manners.  In fact, one bare allegation simply states that Defendants "[w]ere otherwise

10   careless and/or negligent"—nothing more.  (*Id.* ¶ 43(g).)

11   The purportedly stand-alone negligence claim really appears as an attempt to

12   circumvent the pleading failures that plague Dilley's other claims.  For example, the

13   Court previously dismissed Dilley's failure-to-warn claim brought against Bard and

14   Davol, finding that it failed as a matter of law since Dilley actually alleged that his

15   doctor—the learned intermediary—knew about the alleged dangers associated with

16   the PerFix mesh plugs and patches.  (ECF No. 17, at 6–7.)  Yet now Dilley attempts to

17   plead that Defendants failed to "adequately and correctly warn the plaintiff . . . of the

18   dangers of PerFix mesh plugs" and failed to "provide adequate instructions regarding

19   safety precautions to be observed by users, handlers, and persons who would

20   reasonably and foreseeably come into contact with, and more particularly, use PerFix

21   mesh plugs."  (SAC ¶ 41(e), (g); *see also* ¶ 43(b)–(d), (f) (including additional failure-

22   to-warn allegations).)

23   Moreover, as the Court found above, Dilley failed again to properly allege a

24   manufacturing defect sufficient to sustain his negligent products-liability claim.  But

25   in his "negligence" claim, he alleges that Defendants "[n]egligently manufactur[ed]

26   the PerFix mesh plugs in a manner which was dangerous to their users," and "failed to

27   use care in designing and manufacturing PerFix mesh plugs so as to avoid the

28   / / /

8

aforementioned risks to individuals when the PerFix mesh plugs were used for their intended purpose in hernia repairs." (*Id.* ¶¶ 41(*l*); 43(a).).

The separate "negligence" claim is also unnecessarily duplicative under California law. While the Court has addressed Dilley's negligent products-liability claim under that title instead of simply "negligence," the lengthier title does not change the claim's form. Negligent products liability is really just ordinary negligence; the plaintiff must prove the usual negligence elements along with some defect in the product. *Daly v. Gen. Motors Corp.*, 20 Cal. 3d 725, 758 (1978) (Mosk, J., dissenting because the majority failed to observe the established distinction between strict products liability and negligence); *Jiminez v. Sears, Roebuck & Co.*, 4 Cal. 3d 379, 383, 482 P.2d 681, 683 (1971).

Dilley may not recycle his failed claims by simply affixing a different title onto a duplicative claim for which the Court never granted leave to amend. The Court therefore **GRANTS** Defendants' Motion with respect to Dilley's negligence claim.

**D.    Leave to amend**

As a general rule, a court should freely grant leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

The Second Amended Complaint represents Dilley's third pleading in this action. Each time, he has been unable to adequately plead the defect that allegedly plagued the PerFix plugs and patches. Dilley has augmented his Complaint with additional factual allegations surrounding his operations, including findings from the attending physicians. But these additional facts only confirm what no one disputes: Dilley suffered from bilateral hernias, he had the PerFix plugs and patches implanted, something went awry and he had to have them removed. Defendants are still left

without notice as to how the products contained some sort of manufacturing or design defect.

Since Dilley was manifestly aware of his pleading deficiencies after the Court's last dismissal Order, there is little reason to believe that he will be able to suddenly the cure the deficiencies the fourth time around.  The Court therefore will not permit further amendment.

**E.     Order to Show Cause**

Now that the Court has dismissed all claims against Bard and Davol, only Dr. Edrich remains as a defendant.  As Bard and Davol argued in their Notice of Removal, it appears that the applicable one-year statute of limitations bars any medical negligence claim against Dr. Edrich.  *See* Cal. Civ. Proc. Code § 340.5 (barring any professional-negligence action against a healthcare provider one year after the plaintiff discovers, or through reasonable diligence should have discovered, the injury).

Dilley either knew or at least should have discovered any alleged negligence by Dr. Edrich as of March 9, 2011, when the PerFix plugs were explanted, and the surgeon discovered that they had hardened, shrunken, and scarified.  (SAC ¶ 16.)  But Dilley did not file suit against Dr. Edrich until February 20, 2014—almost three years after the apparent running of the statute of limitations.

The Court therefore **ORDERS** Dilley to **SHOW CAUSE** in writing by **June 4, 2014**, why the Court should not dismiss his claim against Dr. Edrich for failure to state a claim under Rule 12(b)(6).  No hearing will be held.  Failure to timely respond will result in dismissal for lack of prosecution.

/ / /

/ / /

/ / /

/ / /

/ / /

**V.    CONCLUSION**

For the reasons discussed above, the Court **GRANTS** C.R. Bard and Davol's Motion to Dismiss Plaintiff's Second Amended Complaint **WITHOUT LEAVE TO AMEND**.  (ECF No. 22.)  The Court also **ORDERS** Dilley to **SHOW CAUSE** as described in part IV.E.

**IT IS SO ORDERED.**


May 21, 2014


_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**